UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation; and AMAZON.COM SERVICES LLC, a Delaware limited liability corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Individuals and entities doing business as the Amazon Brand Registry Account DHUOG; and DOES 1-10,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

## INTRODUCTION

1. This case involves Defendants' unlawful and expressly prohibited submission of false assertions of copyright and other intellectual property rights to remove content from amazon.com (the "Amazon Store"). Those unlawful activities stifle competition, harm consumers, and tarnish Amazon's trusted brand. Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") bring this lawsuit to prevent and enjoin Defendants from causing future harm to Amazon's customers, third-party selling partners, and Amazon itself, and to hold them accountable for their illegal actions.

2. Amazon owns and operates the Amazon Store and equivalent counterpart international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon, while others are sold by Amazon's numerous third-party selling partners. Amazon is one of the

1  most well-recognized, valuable, and trusted brands in the world.  To protect its customers and safeguard its reputation for trustworthiness, Amazon has invested heavily, both in terms of time and resources, to prevent fraud and abuse in, and to ensure the quality and authenticity of the products available in, the Amazon Store.  For instance, in 2021 alone, Amazon invested over $900 million and employed more than 12,000 people to protect its stores from fraud and abuse.  Amazon stopped over 2.5 million suspected bad actor selling accounts before they published a single listing for sale.

3. As part of this mission, and consistent with the notice-and-takedown procedure set forth in the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, Amazon has developed a suite of intellectual property-protection mechanisms for rightsholders to submit requests for removal of content that they believe violates their intellectual property rights.  One of Amazon's intellectual property-protection services is Amazon Brand Registry, which provides brands who enroll access to advanced capabilities to find and report infringement violations in the Amazon Store.

4. Amazon also invests heavily to protect its third-party selling partners and to ensure that Amazon's intellectual property-protection measures are not abused by bad actors, so that listings of non-infringing products remain active and available for purchase by Amazon customers.

5. Defendants improperly gained access to and used Amazon's intellectual property-protection services and notice-and-takedown procedures to target and remove content from product listings in the Amazon Store, even though they had no ownership rights to the content at issue.

6. Despite Amazon's efforts to curb this type of abuse, in limited circumstances Defendants' scheme worked and materials related to some product listings were temporarily taken down from the Amazon Store in response to Defendants' invalid complaints.  Defendants' willful deception has resulted in direct harm to Amazon, which has expended significant resources investigating and addressing Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm on Amazon and its customers.  Defendants'

actions have also harmed Amazon's third-party selling partners, and they threaten to undermine customer trust in the Amazon Store as a place where sellers compete fairly to provide customers with the widest selection of products and the best prices.

## PARTIES

7. Amazon.com, Inc. is a Delaware corporation with its principal place of business located in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

8. Defendants are a collection of individuals and entities who conspired and operated in concert with each other to falsely assert copyright and other intellectual property rights to seek removal of content from product listings in the Amazon Store. On information and belief, at least one defendant registered for and controlled an Amazon Brand Registry account for the trademark DHUOG; does business under the name Dhuog; and is an individual or entity who operated, controlled, and/or was responsible for a selling account. In the course of its investigation, Amazon determined that Defendants took active steps to mislead Amazon and conceal their true locations and identities from Amazon by providing fraudulent names and/or contract information when purporting to be rights owners. As described in paragraph 46 below, Defendants actively evaded Amazon's efforts to confirm they were the proper rights owners. Defendants deceived Amazon by creating fake websites with disposable domain names using copied images from existing Amazon product listings to those websites, and then submitted URLs of the fake websites as "proof" of the purported copyrighted works Defendants claimed to own. Accordingly, the true identities of the individuals and entities that do business as Dhuog (collectively, "Dhuog") are currently unknown to Amazon.

9. On information and belief, Doe Defendants 1-10 are individuals and entities working in active concert with each other, including individuals and entities associated with Dhuog, to prepare and submit fraudulent takedown requests to Amazon. The identities of the Doe Defendants are currently unknown to Amazon.

10. Dhuog and the Doe Defendants 1-10 are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over Amazon's claim under Title II of the DMCA, 17 U.S.C. § 512 (Count I) pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's claims for common law torts under Washington law (Counts II-IV) pursuant to 28 U.S.C. §§ 1332 and 1367.

12. The Court has personal jurisdiction over Defendants because they committed tortious acts directed to the State of Washington, and Amazon's claims arise from those activities. Defendants affirmatively sought and used the services of Amazon, a corporation with its principal place of business in Washington, as an Amazon Seller and through Amazon's Brand Registry program. Defendants committed or facilitated the commission of tortious acts in Washington and have wrongfully caused Amazon injury in Washington.

13. Further, the named Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of IP rights in the Amazon Store are the state or federal courts located in King County, Washington.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

15. Venue is also proper in this Court with respect to the Doe Defendants by virtue of the allegations stated in paragraph 9 above, which are incorporated herein.

16. Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to the suit occurred, and (c) Defendants directed their unlawful conduct.

## FACTUAL BACKGROUND

**A.     The DMCA's Notice-And-Takedown Procedure, 17 U.S.C. § 512**

17. In 1998, Congress passed the DMCA "to facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age." S. Rep. No. 105-190, at 1-2. Given the nature of the internet,

online service providers often are not in the best position to make sophisticated judgments about the nature or legality of the materials users post or contribute. Online services often lack necessary information (for example, information about the existence of licenses between their users and rightsholders) to make determinations about whether material posted to a website infringes lawfully-held copyrights. Understanding this, Congress, with the DMCA, struck a careful balance between protecting the legitimate rights of copyright owners against the incidence of online infringement while fostering the development and growth of internet services, by creating a safe harbor from copyright infringement claims for service providers that meet certain conditions.

18. In particular, Title II of the DMCA, 17 U.S.C. § 512(c), provides a "notice-and-takedown" framework that gives rightsholders and online service providers both procedural consistency and legal certainty in how complaints of copyright infringement based on user content are handled. This framework relies on those asserting exclusive rights under copyright to provide particularized details about their claims of infringement, including an assurance under penalty of perjury that the complaining party is authorized to act on behalf of the owner of an exclusive right, and a statement that the submitter has a good faith belief that the complained-of use of the copyrighted content is not authorized. Recognizing that service providers are intermediaries and cannot, and should not, be required to make difficult legal determinations about the status of copyrights and content, the DMCA's notice-and-takedown framework places the burden on those asserting rights—who are better positioned to know the facts relating to copyright ownership and infringement—to submit notifications of claimed infringement that contain certain elements. 17 U.S.C. § 512(c)(3)(A). In turn, Subsection 512(c) of the DMCA offers service providers that host content posted by third parties certain protections from copyright liability for third-party content if, in addition to meeting other conditions, the service provider expeditiously removes or disables access to materials complained-of in compliant notifications. 17 U.S.C. § 512(c)(1). Indeed, an intermediary risks losing protection under the DMCA safe harbor protection if it receives, but does not expeditiously act upon, a

notification claiming infringement that contains substantially all of the specified elements, discussed below.

19. To be effective under the DMCA, a notification of claimed infringement must be submitted in writing by a person authorized to act on behalf of the owner of the rights that are allegedly being infringed, and it must contain certain elements. 17 U.S.C. § 512(c)(3)(A). The elements of a DMCA-compliant notification of claimed infringement are:

a. A signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(i).

b. Identification of the copyrighted work claimed to have been infringed. 17 U.S.C. § 512(c)(3)(A)(ii).

c. Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material. 17 U.S.C. § 512(c)(3)(A)(iii).

d. Information reasonably sufficient to permit the service provider to contact the complaining party. 17 U.S.C. § 512(c)(3)(A)(iv).

e. A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law. 17 U.S.C. § 512(c)(3)(A)(v).

f. A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(vi).

20. The DMCA specifically requires rightsholders to support their claims of infringement with statements made under penalty of perjury, and it relies on the accuracy of the notifications that persons making assertions of copyright infringement submit to service providers. Accordingly, neither the DMCA's notice-and-takedown framework, nor its conditions for safe-harbor protections, require a service provider proactively to monitor its service or affirmatively to seek facts indicating infringing activity. 17 U.S.C. § 512(m).

21. The DMCA also protects the service providers' reasonable expectations that they will not be subjected to fraudulent takedown requests. In particular, the DMCA provides a cause of action to any service provider that is injured due to knowing, material misrepresentations in a notification of allegedly infringing material: "Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." 17 U.S.C. § 512(f).

**B.     Amazon's Systems for Protecting Rightsholders and Processing Takedown Requests**

22. Amazon works hard to make the Amazon Store a place where customers can conveniently select from a wide array of authentic and non-infringing products at competitive prices.

23. Amazon respects intellectual property rights and invests substantial resources to ensure that when customers make purchases through the Amazon Store, either directly from Amazon or from one of its millions of selling partners, customers receive non-infringing products made by the true manufacturer of those products.

24. Amazon launched Amazon Brand Registry in 2017, a free service that offers rightsholders an enhanced suite of tools for monitoring and reporting potential instances of infringement. Brand Registry delivers automated brand protections that use machine learning to predict potential infringement and offers registered brands tools to proactively protect their intellectual property. Brand Registry also offers participants enhanced search utilities that use state-of-the-art image search technology to search for and report potentially infringing product listings more easily. Brand Registry further provides rightsholders a streamlined procedure for reporting instances of alleged infringement, including copyright infringement, using the "Report a Violation" tool. More than 700,000 brands are currently enrolled in Brand Registry. Since the

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF                                          - 7 -                          FENWICK & WEST LLP
                                                                                          1191 SECOND AVENUE, 10TH FLOOR
                                                                                          SEATTLE, WASHINGTON  98101

1 launch of Brand Registry, there has been a 99% reduction in reports of suspected infringement by enrolled brands.

25. Consistent with the notice-and-takedown procedures set forth in the DMCA, Amazon has developed multiple mechanisms for copyright owners to submit notifications of copyright infringement. The three main methods are (1) by notifying Amazon's Copyright Agent in writing;[1] (2) if the copyright owner has an Amazon account, by submitting notice via Amazon's Report Infringement form;[2] and (3) if the copyright owner has an Amazon Brand Registry account, by using Amazon's "Report a Violation" Tool.

26. Pursuant to the DMCA, regardless of the notification method, Amazon asks copyright owners or their agents submitting written notifications of infringement to include both "[a] statement by you that you have a good-faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law" and "[a] statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf."

27. For example, before submitting a takedown request through the "Report Infringement" form or Amazon's Brand Registry "Report a Violation" tool, the submitter must read and affirm the following statements:

---

[1] Rightsholders need not have an Amazon customer, seller, or Brand Registry account to submit notices of claimed copyright infringement to Amazon's Copyright Agent.
[2] https://www.amazon.com/report/infringement/signin. A printout of a blank Report Infringement form for a copyright complaint is attached as Exhibit A to this Complaint.

a. "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

b. "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

c. "I understand that, if accepted, the information included in this report may be shared by Amazon with all the reported sellers, with the exception of any order ID number(s)."

28. When Amazon receives a notice of claimed copyright infringement, it confirms that the notice contains the elements required by the DMCA and, if appropriate, expeditiously removes the content that allegedly infringes the purported copyright owner's rights, both to comply with the DMCA and to protect the interests of legitimate rightsholders. This can lead to the removal of entire product listings, or materials appearing in product listings (such as product images), from the Amazon Store unless and until the seller takes the appropriate steps to have what was removed reinstated.

29. As an online service provider, Amazon often must rely on the accuracy of the statements submitted by purported rightsholders, particularly as copyrights are often unregistered.

30. Some bad actors, however, have sought to abuse Amazon's reporting and takedown processes to seek removal of materials from product listings even if they have no valid rights to assert. For example, some bad actors send Amazon takedown requests that falsely accuse a product listing of infringing the bad actor's purported copyright or trademark.

31. One tactic that bad actors use to appear as legitimate rightsholders involves creating fake, disposable websites, with images scraped from the Amazon Store, and then submitting takedown requests falsely claiming copyright ownership over the scraped images. The bad actors then submit copyright complaints against those same product listings, presenting

the URLs for the "dummy" websites, and the scraped images, as purported evidence that those product listings infringe the bad actors' protected copyrights.

32. Bad actors may use this tactic as a way of attacking and fraudulently suppressing or altering listings for competitors' products so that consumers are more likely to buy the same products from the bad actors or their affiliates. Indeed, a fraudulent assertion of copyright ownership can be indistinguishable from a legitimate one: it may contain all the elements for a compliant notification under Section 512(c)(3)(A), and thus would trigger the DMCA's provision for expeditious removal. To the extent that a false assertion of copyright infringement results in the removal of content from accused product listings, however temporarily, that unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

33. Amazon innovates on behalf of customers and selling partners to improve Amazon's notice-and-takedown processes, and to combat abuse. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to help ensure that legitimate sellers and product listings remain in the Store despite the efforts of bad actors to abuse the DMCA's notice-and-takedown framework and to exploit Amazon's systems.

34. In addition to these measures, Amazon actively cooperates with rightsholders and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits like this one are integral components of Amazon's efforts to combat improper and fraudulent takedown schemes.

**C.   Defendant Dhuog's Creation of a Seller Account, Application to Amazon Brand Registry, and Submission of Fraudulent Takedown Requests**

35. Dhuog registered an Amazon seller account on May 19, 2021.

36. To become a third-party seller in the Amazon Store, sellers are required to agree to the BSA, which governs the applicant's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of [its]

obligations and exercise of [its] rights" under the BSA. A true and correct copy of the version of the BSA in effect at the time of Dhuog's agreement is attached as Exhibit B to this complaint.

37. The BSA provides that any individual or entity that registers for a selling account on Amazon represents and warrants that "any information provided or made available by one party to the other party [Amazon] or its Affiliates is at all times accurate and complete." Exhibit B at § 5.

38. The BSA further states that Amazon "may suspend or terminate your account or this Agreement immediately if we determine that … (b) your account has been, or our controls identify that it may be used for deceptive or fraudulent, or illegal activity; or (c) your use of the Services has harmed, or our controls identify that it might harm, other sellers, customers, or Amazon's legitimate interests." Exhibit B at § 3.

39. Dhuog submitted its fraudulent takedown requests through Amazon's Brand Registry "Report a Violation" Tool.

40. Signing up for Amazon Brand Registry requires several affirmative actions on the part of the brand applicant, including acceptance of the Amazon Brand Registry Terms of Use. When a brand applies to participate in Brand Registry, Amazon presents the brand with the following screen:

**Accept terms of use**

**Amazon Brand Registry Terms of Use**

We want every brand to join and use Brand Registry, so we have modified these Terms to make them as simple as possible. Effective 4/25/2020, the following terms apply to your use of Brand Registry:

1. You represent that you own or are authorized by the brand to act on behalf of any brands you register in Brand Registry.
2. You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use of Brand Registry.
3. The Conditions of Use associated with your Amazon account will not apply to your use of Brand Registry.

[Not right now]  [Accept and continue]

As shown above, the Brand Registry enrollment screen requires the brand applicant to read and affirm the following statement: "You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use of Brand Registry."

41. Dhuog applied for an Amazon Brand Registry account under the Dhuog name on August 4, 2021, and its application was approved on August 5, 2021. To support its Brand Registry applications, Dhuog claimed to have a trademark registration for the word mark "DHUOG" with the United States Patent and Trademark Office ("USPTO") with the U.S. Serial Number 90151224 and Registration No. 6334242. The trademark registered for DHUOG identifies Yalin Wu as the current trademark owner.

42. On August 5, 2021, Dhuog's application to participate in Amazon Brand Registry was approved. From September 3 through October 15, 2021, Dhuog used the "Report a Violation" tool to launch a broad campaign of 229 takedown requests, including 202 notifications alleging that specified product listings infringed Dhuog's copyrighted images and 27 notifications alleging that specified product listings were infringing Dhuog's trademark.

43. Each time it used the "Report a Violation" tool, Dhuog declared that it had a good faith belief that the content at issue violated its rights and that use of such content was contrary to law. Dhuog also declared, under penalty of perjury, that the information contained in each notification using the "Report a Violation" tool was accurate, and that Dhuog was the owner, or agent of the owner, of the described rights.

44. Dhuog knew that the content of its notifications was false, that it was not the owner or agent of the owner of the rights described in the submitted report, and that the content it identified was not infringing on any copyright it owned.

45. In reliance on Dhuog's deceptive submissions through the "Report a Violation" tool, which included all the elements that the DMCA requires for a compliant notification of claimed copyright infringement, Amazon expeditiously acted and removed content from product listings Dhuog identified in its complaints.

46. Amazon's subsequent investigation of Dhuog's voluminous complaints showed that Dhuog's claims that its intellectual property rights had been infringed were false. It revealed that Dhuog had created Google Docs documents, copied, and pasted images from existing Amazon product listings into these documents, and then submitted URLs to those documents as identification of the purported copyrighted works Dhuog claimed to own. After Amazon learned

that Dhuog had abused the notice-and-takedown process by deceiving Amazon, Amazon blocked Dhuog's Brand Registry Account. In doing so, Amazon protected its selling partners, customers, and Amazon's reputation. Amazon also restored product listings that had been taken down in the Amazon Store in reliance on Dhuog's deceptions. Amazon blocked the Defendants' corresponding selling account as well.

# COUNT ONE

## Misrepresentation of Copyright Infringement Under 17 U.S.C. § 512(f)

47. Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

48. Section 512(f) of the Copyright Act provides that "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." 17 U.S.C. § 512(f).

49. Defendants submitted false DMCA takedown requests to Amazon through Amazon's "Report a Violation" tool, improperly seeking removal of materials from product listings in the Amazon Store. Defendants' notifications to Amazon falsely represented those trademarks and images appearing in product listings in the Amazon Store infringed on Defendants' purported copyrights.

50. Defendants knew that these representations were false. At the time they submitted the fraudulent takedown notices to Amazon, Defendants could not have reasonably believed that they held any copyright or other intellectual property interest in the works asserted. Yet Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them, consistent with the notice-and-takedown procedures set forth in the DMCA and Amazon's policies.

51. In reliance on the misrepresentations in Defendants' takedown requests, and to act expeditiously to protect what it believed at the time to be legitimate rights, Amazon removed full

listings, or content from listings, impacting approximately 16 product listings in the Amazon Store.

52. By submitting takedown notifications in violation of 17 U.S.C. § 512(f), Defendants willfully, knowingly, and materially misrepresented, that 32 product listings were infringing on their intellectual property.

53. As a result of Dhuog's false takedown requests, Amazon suffered economic harm and expended significant resources to investigate and address Defendants' wrongdoing. Accordingly, Amazon seeks its attorneys' fees and damages, under 17 U.S.C. §512(f), in an amount to be determined at trial.

## COUNT TWO

### Breach Of Contract

54. Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

55. Dhuog breached three separate agreements with Amazon: (1) the Brand Registry Terms of Use, (2) the terms for using the "Report a Violation" tool, and (3) the BSA.

56. By registering a seller account, enrolling in Amazon Brand Registry, and submitting takedown notifications through the "Report a Violation" tool, Dhuog entered into valid and enforceable agreements with Amazon.

57. Dhuog agreed to be bound by the terms of the BSA in exchange for the many benefits of access and use of Amazon's seller services. As a party to the BSA, Dhuog represented and warranted that any information it provided or made available to Amazon was at all times accurate and complete.

58. When Dhuog applied to Amazon Brand Registry, it agreed to provide accurate and truthful information to Amazon in exchange for the benefit of access and use of the Brand Registry services and tools.

59. The "Report a Violation" tool mandatory consent form is a valid and enforceable contract that imposed a duty on all users submitting a takedown notice using the tool: (1) to represent a good faith basis for the notice; and (2) to declare under penalty of perjury that the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 14 - FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

information provided is correct and accurate, and that the user is the owner or agent of the rights described therein.

60. Each time Dhuog submitted takedown notifications to Amazon through the "Report a Violation" tool, Dhuog represented that it had "a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner"; and Dhuog had to declare, under penalty of perjury, "that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

61. Amazon performed all of its contractual obligations.

62. Dhuog breached its contractual obligations to Amazon under the Brand Registry Terms of Use and the terms for using Brand Registry's "Report a Violation" tool by submitting takedown notifications using Brand Registry's "Report a Violation" tool without a good faith basis, by knowingly submitting false information using the "Report a Violation" tool, and by falsely declaring under penalty of perjury that the submission was from the owner or agent of the rightsholder described in its notifications.

63. Dhuog breached its contractual obligations to Amazon under the BSA by knowingly submitting fraudulent takedown notifications in violation of the Copyright Act, 17 U.S.C. §512(f).

64. As a result of Dhuog's breach of its contracts with Amazon, Amazon suffered economic harm in an amount to be determined at trial.

## COUNT THREE

### Tortious Interference with Contractual Relationship

65. Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

66. Amazon and third-party sellers who sell products in the Amazon Store have valid contractual relationships under the Amazon Services Business Solutions Agreement, available at https://sellercentral.amazon.com/help/hub/reference/external/G1791?locale=en-US.

67. On information and belief, Dhuog has knowledge of the valid contractual relationships between Amazon and the third-party sellers in the Amazon Store.

68. Dhuog knowingly and intentionally submitted false takedown notices using the "Report a Violation" tool for an improper purpose, which interfered with Amazon's legitimate business relationships with its selling partners.

69. Dhuog's submission of the false takedown notices using the "Report a Violation" tool caused Amazon to remove content from the product listings of sellers in the Amazon Store. Those actions interfered with the business relationship and expectancy between Amazon and third-party sellers using those product listings.

70. As a result of Dhuog's intentional interference with Amazon's legitimate business interests, Amazon suffered economic harm in an amount to be determined at trial.

## COUNT FOUR

### Fraud

71. Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

72. Dhuog knowingly misrepresented information regarding existing material facts to induce Amazon to take down content from product listings in the Amazon Store.

73. Dhuog knew that its representations were false at the time it submitted the fraudulent takedown notifications using the "Report a Violation" tool through Amazon Brand Registry.

74. Specifically, Dhuog was not in fact acting as an owner or agent of the holder of any legitimate intellectual property rights and did not have the authority to submit takedown notifications using the "Report a Violation" tool. Amazon did not know of the falsity of the misrepresentations and reasonably relied on Dhuog's false representations to its detriment.

75. Amazon had a right to rely on Dhuog's representations in the submission of the takedown notifications, especially given the "Report a Violation" tool's consent form requiring such representations to be true under penalty of perjury. Dhuog exploited Amazon's obligation to act expeditiously on notifications of claimed infringement containing the elements called for

by the DMCA, to comply with the DMCA's eligibility conditions for safe harbor. At the time they submitted the fraudulent takedown notifications to Amazon, Defendants could not have reasonably believed that they held any copyright or other intellectual property interest in the works asserted. Yet Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them, consistent with the notice-and-takedown procedures set forth in the DMCA and Amazon's policies.

76. As a result of its reliance on Dhuog's intentional misrepresentations, Amazon suffered economic harm in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A. That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all others in active concert or participation with them, from:

(i) submitting any takedown notifications based on false assertions of rights ownership to Amazon by any means, whether as written submissions, through the "Report Infringement" form, or using the "Report a Violation" tool;

(ii) enrolling or attempting to enroll in Amazon Brand Registry;

(iii) selling products in Amazon's stores;

(iv) selling products to Amazon or any of its affiliates;

(v) opening or attempting to open any Amazon selling accounts; and

(vi) assisting, aiding, or abetting any other person or entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iv) above.

B. That the Court enter judgment in Amazon's favor on all claims.

C. That Defendants be required to pay all general, special, and actual damages that Amazon has sustained or will sustain as a consequence of Defendants' unlawful acts.

D. That Defendants be required to pay the costs of this action and Amazon's

reasonable attorneys' fees and other costs incurred in prosecuting this action, as provided for by 17 U.S.C. § 512(f), or otherwise allowed by law.

E. That the Court enter an order requiring that as-yet-to-be identified financial institutions restrain and transfer to Amazon all amounts arising from Defendants' unlawful activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

F. That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.

Dated:   March 30, 2023

Respectfully submitted,

FENWICK & WEST LLP

By: /s/ Brian D. Buckley
Brian D. Buckley (WSBA No. 26423)
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:   206.389.4511
Email:         bbuckley@fenwick.com

Attorneys for AMAZON.COM, INC. and AMAZON.COM SERVICES LLC