1

2

The Honorable John H. Chun
The Honorable S. Kate Vaughan

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

AMAZON.COM, INC., a Delaware
corporation; and AMAZON.COM SERVICES
LLC, a Delaware limited liability corporation,

Plaintiffs,

v.

QIANG LIU, an individual; YALIN WU, an
individual; LIAO DENGKUN, an individual;
and DOES 1-10,

Defendants.

No. 2:23-cv-00484-JHC-SKV

**FIRST AMENDED COMPLAINT
FOR CANCELLATION OF
FEDERAL TRADEMARK
(REGISTRATION NO. 6,334,242),
DAMAGES, AND EQUITABLE
RELIEF**

17

18

I.    **INTRODUCTION**

19

20

21

22

23

24

25

26

27

1.      This case involves Defendants' unlawful and expressly prohibited submission of false assertions of copyright and other intellectual property rights to remove content and product listings from the Amazon.com store (the "Amazon Store"). Defendants fraudulently applied for and obtained a trademark registration from the United States Patent and Trademark Office ("USPTO"), which they used to gain access to Amazon's intellectual property-protection services to commit deceptive activities that undermine Amazon's selling partners, harm consumers, and tarnish Amazon's trusted brand. Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") bring this lawsuit to prevent and enjoin Defendants from causing future harm to Amazon's customers, third-party selling partners, and Amazon itself, to prevent

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 1
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1   further fraudulent use of their trademark registration, and to hold them accountable for their

2   illegal actions.

3   2.      Amazon owns and operates the Amazon Store and equivalent counterpart

4   international stores and websites. Amazon's stores offer products and services to customers in

5   more than 100 countries around the globe. Some of the products are sold directly by Amazon,

6   while others are sold by Amazon's numerous third-party selling partners. Amazon is one of the

7   most well-recognized, valuable, and trusted brands in the world. To protect its customers and

8   safeguard its reputation for trustworthiness, Amazon has invested heavily, both in terms of time

9   and resources, to prevent fraud and abuse in the Amazon Store and to ensure the quality and

10  authenticity of the products available in the Amazon Store.

11  3.      As part of this mission, and consistent with the notice-and-takedown procedure

12  set forth in the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, Amazon has

13  developed a suite of intellectual property-protection mechanisms for rightsholders to submit

14  requests for removal of content that they believe violates their intellectual property rights. One of

15  Amazon's intellectual property-protection services is Amazon Brand Registry, which provides

16  brands which enroll with access to advanced capabilities to find and report infringement

17  violations in the Amazon Store.

18  4.      Amazon also invests heavily to protect its third-party selling partners and to

19  ensure that Amazon's intellectual property-protection measures are not abused by bad actors, so

20  that listings of non-infringing products remain active and available for purchase by Amazon

21  customers.

22  5.      Defendants improperly gained access to and used Amazon's intellectual property-

23  protection services and notice-and-takedown procedures to target and remove content from

24  product listings in the Amazon Store, even though they had no ownership rights to the content at

25  issue. Moreover, after extensive outside investigation, Amazon has discovered that Defendants

26  used a fraudulent trademark application and falsified information to gain access to Amazon

27  Brand Registry and its enhanced enforcement tools. On information and belief, a primary

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 2
(2:23-cv-00484-JHC-SKV)

purpose of Defendants' fraudulent takedown scheme was to unfairly divert sales from competitors' listings in Amazon's stores.

6.  Despite Amazon's efforts to curb this type of abuse, in limited circumstances Defendants' scheme worked and materials related to some product listings were temporarily taken down from the Amazon Store in response to Defendants' invalid and fraudulent complaints. Defendants' willful deception has resulted in direct harm to Amazon, which has expended significant resources in investigating and addressing Defendants' wrongdoing. Defendants' actions have also harmed Amazon's third-party selling partners, and they threaten to undermine customer trust in the Amazon Store as a store with a wide selection of products and the best prices. Amazon brings this lawsuit to hold Defendants accountable and to prevent Defendants from inflicting future harm on Amazon, its legitimate selling partners, and its customers.

## II.  PARTIES

7.  Amazon.com, Inc. is a Delaware corporation with its principal place of business located in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

8.  Defendants are a collection of individuals and entities who conspired and operated in concert with each other to falsely assert copyright and other intellectual property rights to seek removal of content from product listings in the Amazon Store. Defendants took intentional and affirmative steps to hide their true identities and whereabouts from Amazon by using fake contact information in their communications with Amazon. Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory liability.

9.  On information and belief, Defendant Qiang Liu ("Defendant Liu") is an individual residing in China who personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this First Amended Complaint

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 3
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

("FAC"), and derived a direct financial benefit from that wrongful conduct. Specifically, Defendant Liu was responsible for the Amazon Brand Registry account bearing the account number 1270317, for which the trademark "Dhuog" (USPTO Reg. No. 6,334,242, the "Dhuog Trademark") was added on or about August 4, 2021 ("Dhuog Brand Registry Account"). Defendant Liu was also responsible for the Amazon selling account named "TOP1MANS SHIQI" (the "Top1mans Selling Account"), that was used to create the Dhuog Brand Registry Account. On further information and belief, Defendant Liu acted in concert with the other Defendants in operating the Dhuog Brand Registry Account and the Top1mans Selling Account.

10.     On information and belief, Defendant Yalin Wu ("Defendant Wu") is an individual residing in China who personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this FAC, and derived a direct financial benefit from that wrongful conduct. Specifically, Defendant Wu is the owner of the Dhuog Trademark, and on information and belief, was responsible for the Dhuog Brand Registry Account and the Top1mans Selling Account. On further information and belief, Defendant Wu acted in concert with the other Defendants in operating the Dhuog Brand Registry Account and the Top1mans Selling Account.

11.     On information and belief, Defendant Liao Dengkun ("Defendant Dengkun") is an individual residing in China who personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this FAC, and derived a direct financial benefit from that wrongful conduct. Specifically, Defendant Dengkun applied to register the Dhuog Trademark, was the owner of that trademark before assigning it to Defendant Wu, and on information and belief, was responsible for the Dhuog Brand Registry Account and the Top1mans Selling Account. On further information and belief, Defendant Dengkun acted in concert with the other Defendants in operating the Dhuog Brand Registry Account and the Top1mans Selling Account.

12.     On information and belief, Doe Defendants 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other, and Defendants Liu, Wu, and

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 4
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Dengkun to prepare and submit fraudulent takedown requests to Amazon. The identities of the Doe Defendants are currently unknown to Amazon.

13.     Defendants Liu, Wu, Dengkun, and the Doe Defendants are collectively referred to as "Defendants."

### III.     JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction over Amazon's claim under Title II of the DMCA, 17 U.S.C. § 512 (First Claim) pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's claims for common law torts under Washington law (Second through Fifth Claims) pursuant to 28 U.S.C. §§ 1332 and 1367. The Court has subject matter jurisdiction over Amazon's Lanham Act claims for cancellation (Sixth Claim) and civil liability for false or fraudulent registration (Seventh Claim) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

15.     The Court has personal jurisdiction over Defendants because they committed tortious acts directed to the State of Washington, and Amazon's claims arise from those activities. Defendants affirmatively sought and used the services of Amazon, a corporation with its principal place of business in Washington, through Amazon's Brand Registry program. Defendants specifically targeted the Amazon Store, including by submitting false information to Amazon in connection with the Dhuog Brand Registry Account and by issuing fraudulent notifications and takedowns on Amazon product listing pages. Defendants committed or facilitated the commission of tortious acts directed to Amazon in Washington, and have wrongfully caused Amazon injury in Washington.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

17.     Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to the suit occurred, and (c) Defendants directed their unlawful conduct.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 5
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## IV.     FACTUAL BACKGROUND

### A.     The DMA's Notice-And-Takedown Procedure, 17 U.S.C. § 512

18.     In 1998, Congress passed the DMCA "to facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age." S. Rep. No. 105-190, at 1-2. Given the nature of the internet, online service providers often are not in the best position to make sophisticated judgments about the nature or legality of the materials that users post or contribute. Online services often lack necessary information (for example, information about the existence of licenses between their users and rightsholders) to make determinations about whether material posted to a website infringes lawfully-held copyrights. Understanding this, Congress struck a careful balance with the DMCA between protecting the legitimate rights of copyright owners against the incidence of online infringement while fostering the development and growth of internet services, by creating a safe harbor from copyright infringement claims for service providers that meet certain conditions.

19.     In particular, Title II of the DMCA, 17 U.S.C. § 512(c), provides a "notice-and-takedown" framework that gives rightsholders and online service providers both procedural consistency and legal certainty in how complaints of copyright infringement based on user content are handled. This framework relies on those asserting exclusive rights under copyright to provide particularized details about their claims of infringement, including an assurance under penalty of perjury that the complaining party is authorized to act on behalf of the owner of an exclusive right, and a statement that the submitter has a good faith belief that the complained-of use of the copyrighted content is not authorized. Recognizing that service providers are intermediaries and cannot, and should not, be required to make difficult legal determinations about the status of copyrights and content, the DMCA's notice-and-takedown framework places the burden on those asserting rights—who are better positioned to know the facts relating to copyright ownership and infringement—to submit notifications of claimed infringement that contain certain elements. 17 U.S.C. § 512(c)(3)(A). In turn, Subsection 512(c) of the DMCA

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 6
(2:23-cv-00484-JHC-SKV)

offers service providers that host content posted by third parties certain protections from copyright liability for third-party content if, in addition to meeting other conditions, the service provider expeditiously removes or disables access to materials complained-of in compliant notifications. 17 U.S.C. § 512(c)(1). Indeed, an intermediary risks losing protection under the DMCA safe harbor protection if it receives, but does not expeditiously act upon, a notification claiming infringement that contains substantially all of the specified elements, discussed below.

20.     To be effective under the DMCA, a notification of claimed infringement must be submitted in writing by a person authorized to act on behalf of the owner of the rights that are allegedly being infringed, and it must contain certain elements. 17 U.S.C. § 512(c)(3)(A). The elements of a DMCA-compliant notification of claimed infringement are:

a.      A signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(i).

b.      Identification of the copyrighted work claimed to have been infringed. 17 U.S.C. § 512(c)(3)(A)(ii).

c.      Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material. 17 U.S.C. § 512(c)(3)(A)(iii).

d.      Information reasonably sufficient to permit the service provider to contact the complaining party. 17 U.S.C. § 512(c)(3)(A)(iv).

e.      A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law. 17 U.S.C. § 512(c)(3)(A)(v).

f.      A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(vi).

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 7
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

21.     The DMCA specifically requires rightsholders to support their claims of infringement with statements made under penalty of perjury, and it relies on the accuracy of the notifications that persons making assertions of copyright infringement submit to service providers. Accordingly, neither the DMCA's notice-and-takedown framework, nor its conditions for safe-harbor protections, require a service provider proactively to monitor its service or affirmatively to seek facts indicating infringing activity. 17 U.S.C. § 512(m).

22.     The DMCA also protects the service providers' reasonable expectations that they will not be subjected to fraudulent takedown requests. In particular, the DMCA provides a cause of action to any service provider that is injured due to knowing, material misrepresentations in a notification of allegedly infringing material: "Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." 17 U.S.C. § 512(f).

**B.      Amazon's Systems for Protecting Rightsholders and Processing Takedown Requests**

23.     Amazon works hard to make the Amazon Store a place where customers can conveniently select from a wide array of authentic and non-infringing products at competitive prices.

24.     Amazon respects intellectual property rights and invests substantial resources to ensure that when customers make purchases through the Amazon Store, either directly from Amazon or from one of its millions of selling partners, customers receive non-infringing products made by the true manufacturer of those products. In 2023 alone, Amazon invested over $1.2 billion and employed more than 15,000 people to protect its stores from counterfeits, fraud and other forms of abuses. Amazon stopped over 700,000 suspected bad-actor selling accounts before they published a single listing for sale.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 8
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

25.     In 2017, Amazon launched Amazon Brand Registry, a free service that offers rightsholders an enhanced suite of tools for monitoring and reporting potential instances of infringement, regardless of their relationship with Amazon. To be eligible for Brand Registry, rightsholders must have an active trademark registration, or in some circumstances, a pending trademark application.[1] Brand Registry delivers automated brand protections that use machine learning to predict potential infringement and offers registered brands tools to proactively protect their intellectual property. Brand Registry also offers participants enhanced search utilities that use state-of-the-art image search technology to search for and report potentially infringing product listings more easily. Brand Registry further provides rightsholders a streamlined procedure for reporting instances of alleged infringement, including trademark and copyright infringement, using the "Report a Violation" tool.

26.     Consistent with the notice-and-takedown procedures set forth in the DMCA, Amazon has developed multiple mechanisms for copyright owners to submit notifications of copyright infringement. The three main methods are (1) by notifying Amazon's Copyright Agent in writing;[2] (2) if the copyright owner has an Amazon account, by submitting notice via Amazon's Report Infringement form;[3] and (3) if the copyright owner has an Amazon Brand Registry account, by using Amazon's "Report a Violation" Tool.

27.     Pursuant to the DMCA, regardless of the notification method, Amazon asks copyright owners or their agents submitting written notifications of infringement to include both "[a] statement by you that you have a good-faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law" and "[a] statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf."

---

[1] The detailed eligibility requirements for Brand Registry are accessible at https://brandservices.amazon.com/brandregistry/eligibility.

[2] Rightsholders need not have an Amazon customer, seller, or Brand Registry account in order to submit notices of claimed copyright infringement to Amazon's Copyright Agent.

[3] https://www.amazon.com/report/infringement/signin. A printout of a blank Report Infringement form for a copyright complaint is attached as **Exhibit A** to this FAC.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 9
(2:23-cv-00484-JHC-SKV)

28.     For example, before submitting a takedown request through the "Report Infringement" form or Amazon's Brand Registry "Report a Violation" tool, the submitter must read and affirm the following statements:

a.     "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

b.     "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

c.     "I understand that, if accepted, the information included in this report may be shared by Amazon with all the reported sellers, with the exception of any order ID number(s)."

29.     When Amazon receives a notice of claimed copyright infringement, it confirms that the notice contains the elements required by the DMCA and, if appropriate, expeditiously removes the content that allegedly infringes the purported copyright owner's rights, both to comply with the DMCA and to protect the interests of legitimate rightsholders. This can lead to the removal of entire product listings, or materials appearing in product listings (such as product images), from the Amazon Store unless and until the seller takes the appropriate steps to have what was removed reinstated.

30.     As an online service provider, Amazon often must rely on the accuracy of the statements submitted by purported rightsholders, particularly as copyrights are often unregistered.

31.     Some bad actors, however, have sought to abuse Amazon's reporting and takedown processes to seek removal of materials from product listings even if they have no valid rights to assert. For example, some bad actors send Amazon takedown requests that falsely accuse a product listing of infringing the bad actor's purported copyright.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 10
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

32.     One tactic that bad actors use to appear as legitimate rightsholders involves creating fake, disposable websites, with images scraped from the Amazon Store, and then submitting takedown requests that falsely claim copyright ownership over the scraped images. The bad actors then submit copyright complaints against those same product listings, presenting the URLs for the "dummy" websites, and the scraped images, as purported evidence that those product listings infringe the bad actors' protected copyrights.

33.     Amazon also allows rightsholders to report listings that violate their trademark rights, including through Amazon's Report Infringement form and Amazon's Brand Registry "Report a Violation" tool. Amazon handles and processes notices of trademark infringement for products listed for sale in the Amazon Store in a similar manner to how it handles notices of copyright infringement, as set forth above. Once Amazon receives a report that a product or listing infringes on a rightsholder's trademark, Amazon will review that claim and determine the appropriate response to protect the rightsholder, the Amazon Store, and its customers.

34.     Another tactic bad actors use to take advantage of Amazon's intellectual property infringement policies is to report non-infringing listings falsely claiming the listing violates their trademark rights, which can involve tampering with product listings to falsely insert a trademark into the product images or description prior to submitting the trademark complaint.

35.     Bad actors may use these tactics as a way of attacking and fraudulently suppressing or altering listings for competitors' products so that consumers are more likely to buy the same products from the bad actors or their affiliates. Indeed, a fraudulent assertion of an intellectual property violation can be indistinguishable from a legitimate one, and may trigger Amazon's obligations to remove the product listing from the Amazon Store. To the extent that a false assertion of infringement results in the removal of content from accused product listings, however temporarily, that unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 11
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

36.     Amazon innovates on behalf of customers and selling partners to improve Amazon's notice-and-takedown processes, and to combat abuse. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to help ensure that legitimate sellers and product listings remain in the Store despite the efforts of bad actors to abuse the notice-and-takedown framework for intellectual property violations and to exploit Amazon's systems.

37.     In addition to these measures, Amazon actively cooperates with rightsholders and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits like this one are integral components of Amazon's efforts to combat improper and fraudulent takedown schemes.

### C.     Defendants Obtained the Dhuog Trademark Through Fraud

38.     Defendants' fraudulent scheme began by deceiving the USPTO into issuing the registration for the Dhuog Trademark.

39.     Defendant Dengkun, either directly or through unknown third parties who served as his agent, filed the application to register the Dhuog Trademark with the USPTO on September 1, 2020. Upon information and belief, this application falsely purported to be filed by a U.S. attorney, contained a fraudulent declaration, and included a fabricated specimen purporting to show use of the Dhuog Trademark.

40.     The USPTO requires all foreign-domiciled trademark applicants to be represented by an attorney who is licensed in the United States. *See* 37 C.F.R. § 2.11(a); 84 F.R. 31498. Foreign applicants may not circumvent this "U.S. Counsel Rule" by hiring a U.S.-based lawyer who has minimal or no participation in the trademark application process. *See* 37 C.F.R. §§ 11.101, 11.103, 11.503, 11.505, 11.804(c).

41.     The USPTO promulgated the U.S. Counsel Rule in 2019 "in response to the increasing problem of foreign trademark applicants who purportedly are pro se . . . and who are filing inaccurate and possibly fraudulent submissions that violate the Trademark Act (Act) and/or the USPTO's rules." Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 12
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

and Registrants, 84 Fed. Reg. 127 (July 2, 2019) (codified at 37 CFR Parts 2, 7, and 11). The USPTO found that "foreign applicants file applications claiming use of a mark in commerce, but frequently support the use claim with specimens that indicate the mark may not actually be in use," often "on the advice, or with the assistance, of foreign individuals and entities who are not authorized to represent trademark applicants before the USPTO." *Id.* The prevalence of fraudulent filings by foreign applicants "undermines the accuracy and integrity of the U.S. trademark register and its utility as a means for the public to reliably determine whether a chosen mark is available for use or registration, and places a significant burden on the trademark examining operation." *Id.*

42.     Moreover, "the U.S. Counsel Rule helps [the USPTO] determine whether or not the applicant is indeed a real person who either lives or has authorized representation in the United States." USPTO Director's Blog, How the Domicile Address Requirement Advances Our Trademark Anti-Fraud Efforts, by Dave Gooder, Commissioner for Trademarks, published on August 30, 2023.[4] Nonetheless, the USPTO still faces "determined scammers" who seek to evade the USPTO's requirement for a valid domicile address and the U.S. Counsel Rule. *Id.* As such, since 2019, the USPTO has issued numerous sanctions orders and terminated thousands of invalidly filed applications. *Id.* The USPTO has further sought the help of stakeholders in the trademark community to support its efforts in stopping this fraud and abuse. *Id.*

43.     The USPTO's records show that the application to register the Dhuog Trademark was purportedly filed by a U.S.-based attorney named Jeffrey S. Firestone. On information and belief, Defendant Dengkun or his agents filed the application falsely using the name and USPTO account of Mr. Firestone in order to circumvent the U.S. Counsel Rule. On further information and belief, Mr. Firestone had no involvement in the application to register the Dhuog Trademark.

44.     According to a Show Cause Order issued by the USPTO that sought sanctions against several China-based individuals and entities, Mr. Firestone's name and credentials have been abused by bad actors to file thousands of false and fraudulent trademark applications,

---

[4] Accessible at https://www.uspto.gov/blog/director/entry/how-the-domicile-address-requirement.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 13
(2:23-cv-00484-JHC-SKV)

including after Mr. Firestone passed away in July 2021. *See In re Shenzhen Haiyi Enter. Mgmt. Co., Ltd., Haiyi Enter. Serv. (Shenzhen) Co., Ltd. Haiyi Co., Ltd., and Haiyi Group Co., Ltd.,* USPTO Show Cause Order dated August 25, 2022.

45.     The USPTO's Show Cause Order further found that the numerous filings using Mr. Firestone's name contained specimens of use "that appear[ed] to have been created for the purpose of circumventing USPTO use in commerce and specimen rules." *Id.* In particular, those specimens depicted "goods allegedly for sale on e-commerce websites with accompanying invoices that contain false, fictitious or fraudulent information" that "appear[ed] to have been developed for no other purpose than to show use in commerce as part of trademark application submissions." *Id.*

46.     Likewise, on information and belief, the specimen filed in connection with the application to register the Dhuog Trademark was fabricated. The specimen purported to show a wireless charger sold on the website hengyishangcheng.com under the Dhuog Trademark. However, the contact information listed for the website in the specimen included the email address "sales@yourcompany.com," demonstrating that the specimen was a doctored website and not a *bona fide* use of the Dhuog Trademark.

47.     On information and belief, the website hengyishangcheng.com meets the USPTO's criteria for a fraudulent specimen farm website, which is a website used "solely for the purpose of creating specimens to attempt to meet the USPTO's application specimen requirement."[5] The hengyishangcheng.com website has been used for specimens in at least six applications for "a standard set of consumer goods, such as eyeglasses, clothing, toys, electronics, or hand tools—all types of goods that are typically mass-produced," which, along with displaying placeholder text for a contact email address, are characteristics associated with fraudulent specimen farms. More specifically:

---

[5] USPTO notice related to "specimen farms," accessible at: https://www.uspto.gov/trademarks/protect/challenge-invalid-specimens.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 14
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

- U.S. Application No. 90150822 for the mark HTTBE was also filed on September 1, 2020 (the same date as the Dhuog Trademark), allegedly by attorney Jeffrey S. Firestone, in the name of Defendant Dengkun for Class 8 goods including hand tools and lawn/garden tools. The specimen shows a product listing on the hengyishangcheng.com website for a knife sharpening stone at the same price ($19.99) as the Dhuog wireless charger, and the printout is dated August 25, 2020, the same day as the specimen for the Dhuog application. The contact information listed for the website in the specimen also included the apparent placeholder email address sales@yourcompany.com.

- U.S. Application No. 90264546 for the mark TYMRY was filed on October 19, 2020, allegedly by attorney Jeffrey S. Firestone, in the name of Foshan Agan Warehousing Service Co., Ltd for Class 14 goods including jewelry and clocks. The specimen shows a product listing on the hengyishangcheng.com website for a clock. The contact information listed for the website in the specimen also included the apparent placeholder email address sales@yourcompany.com.

- U.S. Application No. 90151609 for the mark ZNLZHIX was also filed on September 1, 2020, allegedly by attorney Jeffrey S. Firestone, in the name of Lin Chunfeng for Class 9 goods including electronics. The specimen shows a product listing on the hengyishangcheng.com website for a 3-pack USB wall charger (sold for $10.99); the printout is dated August 25, 2020, the same day as the specimen for the Dhuog application. The contact information listed for the website in the specimen also included the apparent placeholder email address sales@yourcompany.com.

- U.S. Application No. 90596052 for the mark MKENE was filed on March 23, 2021 under the attorney name Jackson George, which the USPTO has determined to be a fictitious name used by foreign agencies to fraudulently file applications. *See In re Shenzhen Haiyi Enter. Mgmt. Co., Ltd., Haiyi Enter. Serv. (Shenzhen)*

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

*Co., Ltd. Haiyi Co., Ltd., and Haiyi Group Co., Ltd.,* USPTO Show Cause Order dated August 25, 2022. Moreover, the email address listed for the supposed attorney of record, xutingservice@yeah.net, is the same email address used for Firestone in the Dhuog Trademark application. The MKENE application was filed in the name of Shuaichong Zhao for Class 28 goods including toys and fitness equipment. The specimen includes two alleged product listings on the hengyishangcheng.com website, one for a yoga mat and one for a toy gun. Several years later, to date, the application for MKENE remains unexamined most likely due to the fact that the attorney information in the application is false and the application was fraudulently submitted.

- U.S. Application No. 90163346 for the mark RKWINS was filed on September 7, 2020, allegedly by attorney Jeffrey S. Firestone, in the name of Huang Weifeng for Class 25 goods including apparel. The specimen shows product listings on the hengyishangcheng.com website for swimsuits. The contact information listed for the website in the specimen also included the apparent placeholder email address sales@yourcompany.com.

- U.S. Application No. 90171009 for the mark HOMELON was filed on September 10, 2020, allegedly by attorney Jeffrey S. Firestone, in the name of Little Wolf Dog (Shenzhen) Technology Co., Ltd for Class 21 goods including brushes, household containers, and pet tools/accessories. The specimen shows a product listing on the hengyishangcheng.com website for an eyebrow brush. The contact information listed for the website in the specimen also included the apparent placeholder email address sales@yourcompany.com.

48.   Currently, the hengyishangcheng.com website is not active and is inoperable.

49.   The wireless charger that appears in the specimen for the Dhuog Trademark appears to have been taken from the online product listings of a third party, Tozo, whose charger

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 16
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

has been sold without use of the Dhuog Trademark since at least 2018 in the Amazon Store[6] and is currently sold on Tozo's website.[7]

50.     These facts suggest that the hengyishangcheng.com website is a fraudulent specimen farm website per USPTO criteria.

51.     On information and belief, Defendant Dengkun did not use the Dhuog Trademark in commerce in the United States in connection with any goods as of the date he filed the application to register that mark.

52.     The application to register the Dhuog Trademark contained a false and fraudulent declaration. Each trademark application must include a declaration attesting, among other things, that (i) the mark is in use in commerce as of the filing date of the application on the goods and/or services listed in the application as shown in the specimen filed with the application; and (ii) the specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date. These statements in the Dhuog Trademark were false because Defendant Dengkun knew that the specimen was fabricated, and that there was no *bona fide* use of the mark in commerce.

53.     The USPTO was unaware of the false statements in the application to register the Dhuog Trademark.

54.     The USPTO relied on these false statements when it accepted the application to register the Dhuog Trademark and when it issued the registration for that mark on April 27, 2021. But for these false statements, the USPTO would not have issued the registration for the Dhuog Trademark.

55.     Defendant Dengkun assigned the Dhuog Trademark to Defendant Wu in September 2021.

---

[6] See https://www.amazon.com/TOZO-W1-Qi-Certified-Technology-Compatible/dp/B07FM8R7J1/ref=cm_cr_arp_d_product_top?ie=UTF8&th=1.

[7] https://www.tozostore.com/products/w1?variant=44913783865633.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 17
(2:23-cv-00484-JHC-SKV)

**D.** **Defendants' Application to Amazon Brand Registry and Submission of Fraudulent Takedown Requests**

56.     Defendants submitted their fraudulent takedown requests through Amazon's Brand Registry "Report a Violation" Tool.

57.     Signing up for Amazon Brand Registry requires several affirmative actions on the part of the brand applicant, including acceptance of the Amazon Brand Registry Terms of Use.

58.     When a person applies to participate in Brand Registry, Amazon presents the brand with the following screen:



59.     As shown above, the Brand Registry enrollment screen requires the brand applicant to read and affirm the following statement: "You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use of Brand Registry."

60.     Additionally, to be eligible for a Brand Registry account, rightsholders must demonstrate that they have an active trademark registration or, in some circumstances, a pending trademark application. In order to verify that the Brand Registry account applicant has an active trademark registration or pending trademark application, Amazon sends a registration code to the email addresses provided for the attorney of record for the trademark holder or applicant, as it appears in the USPTO's records. Brand Registry applicants can only complete their enrollment if they provide this registration code.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 18
(2:23-cv-00484-JHC-SKV)

61.     On information and belief, Defendants were all responsible for controlling and/or operating the Dhuog Brand Registry Account, as evidenced by their responsibility for the Dhuog Trademark that was used to open the Dhuog Brand Registry Account and/or other connections to the Brand Registry Account, as explained herein. Defendants first agreed to the Amazon Brand Registry Terms of Use on August 4, 2021 when they applied to open an Amazon Brand Registry Account using the Top1mans Selling Account. Defendants applied to add the Dhuog Trademark to their Amazon Brand Registry account the same day, and their application was approved on August 5, 2021. As part of the Brand Registry account creation process, Defendant Dengkun, as the owner of the trademark in the USPTO's records at the time, received through his agent a registration code from Amazon via email. On information and belief, Defendant Dengkun used that registration code to register the Dhuog Brand Registry Account, and on September 24, 2021, filed with the USPTO an assignment of the Dhuog Trademark, assigning the mark to Defendant Wu.

62.     From September 3, 2021, through October 15, 2021, Defendants used the "Report a Violation" tool in the Dhuog Brand Registry Account to launch a broad campaign of 229 takedown requests to Amazon alleging that specified product listings infringed Defendants' purported copyrighted images and/or infringed the Dhuog Trademark.

63.     Each time Defendants used the "Report a Violation" tool, they declared that they had a good faith belief that the content at issue violated their rights and that use of such content was contrary to law. Defendants also declared, under penalty of perjury, that the information contained in each notification using the "Report a Violation" tool was accurate, and that they were the owner, or agent of the owner, of the described rights.

64.     Defendants knew that the content of their notifications were false, that they were not the owner or agent of the owner of the rights described in the submitted reports, and that the content they identified was not infringing on any copyright or trademark they owned.

65.     In reliance on Defendants' deceptive submissions through the "Report a Violation" tool, which included all the elements that the DMCA requires for a compliant

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 19
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

notification of claimed infringement, Amazon expeditiously acted and removed content from product listings Defendants identified in their complaints.

66.     Amazon's subsequent investigation of Defendants' voluminous complaints using the Dhuog Brand Registry Account has uncovered that Defendants willfully made fraudulent and invalid claims that their intellectual property rights had been infringed. For example, the investigation revealed that Defendants copied and pasted images from existing Amazon product listings into documents, uploaded those documents to Google Docs, and then submitted the Google Docs URLs as identification of the purported copyrighted works Defendants claimed to own. In other instances, Defendants created fake websites with disposable domain names, copied and pasted images from existing Amazon product listings to those websites, and then submitted URLs of the fake websites as identification of the purported copyrighted works that Defendants claimed to own.

67.     For example, on October 14, 2021, Defendants used the Dhuog Brand Registry Account to submit a notification of claimed infringement through the "Report a Violation" tool. The notification identified a URL on the domain ibanana18.com as the purported copyrighted work that Defendants owned. Amazon's further investigation revealed that the domain ibanana18.com was created solely for the purpose of submitting the notification. Indeed, the content in the product listings that Defendants claimed was infringing had been uploaded to the Amazon Store prior to the creation of the ibanana18.com domain. Defendants' notification was false, and Defendants knew their statements to Amazon were false because they specifically created the content on the ibanana18.com domain with content taken from the Amazon Store that Defendants did not own. By making the affirmations listed above in the "Report a Violation" tool, Defendants intended for Amazon to rely on their statements that the content reported was infringing, and Amazon did in fact rely on those statements when it removed the content from product listings that Defendants identified in their fraudulent notification.

68.     In September and October 2021, Defendants used the Dhuog Brand Registry Account to submit a total of 202 notifications of claimed copyright infringement through the

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 20
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

"Report a Violation" tool. Amazon's investigation revealed that each of Defendants' claims of infringement was false, and followed the same type of fraudulent scheme described above.

69.     In addition to fraudulent copyright infringement claims, Defendants also submitted fraudulent notices claiming that products in the Amazon Store infringed the Dhuog Trademark.

70.     On September 9, 2021, Defendants used the Dhuog Brand Registry Account to submit a notification of claimed trademark counterfeiting through the "Report a Violation" tool. The notification claimed that a listing for a monocular telescope violated the Dhuog Trademark. By making the affirmations listed above in the "Report a Violation" tool, Defendants intended for Amazon to rely on their statements that the reported listing was infringing, and Amazon did in fact rely on those statements when it investigated the takedown request and temporarily removed a product listing from the Amazon Store that Defendants identified in their fraudulent notification.

71.     In September and October 2021, Defendants used the Dhuog Brand Registry Account to submit a total of 27 notifications of claimed trademark infringement through the "Report a Violation" tool. Amazon's investigation revealed that each of Defendants' claims of infringement was false, and followed the same fraudulent scheme described above. In addition, on information and belief, Defendants manipulated and altered product images on certain listings that they claimed were infringing by adding the Dhuog Trademark to those product images in an effort to create the false appearance of infringement.

72.     Through discovery in this Action, Amazon identified Defendant Liu as the individual responsible for controlling and operating the Dhuog Brand Registry Account, and for issuing fraudulent notifications through that Account. Specifically, when Defendants opened the Dhuog Brand Registry Account, they did so by first logging into the Top1mans Selling Account, and then used the Top1mans Selling Account to create the Dhuog Brand Registry Account. Discovery revealed that Defendants linked a financial account that Defendant Liu owned to the Top1mans Selling Account, and that Defendant Liu's financial account received disbursements

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 21
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

from the Top1mans Selling Account. Because the Top1mans Selling Account was used to open

the Dhuog Brand Registry Account, and because Defendant Liu is directly linked to the

Top1mans Selling Account, it is reasonable to infer that Defendant Liu was responsible for

operating the Dhuog Brand Registry Account as well. In addition, the Top1mans Selling

Account was actively selling products in the Amazon Store during Defendants' campaign of

submitting fraudulent takedown notices. On information and belief, Defendants' takedown

campaign was motivated in part by an attempt to unfairly divert sales from the targeted listings to

the competing product listings of the Top1mans Selling Account.

73.     After Amazon learned that Defendants had abused the notice-and-takedown

process by deceiving Amazon, Amazon blocked the Dhuog Brand Registry Account. In doing so,

Amazon protected its selling partners, customers, and Amazon's reputation. Amazon also

restored product listings that had been taken down in the Amazon Store in reliance on

Defendants' deceptions. Amazon blocked the Top1mans Selling Account as well.

## V.     CLAIMS

### FIRST CLAIM
*(Against All Defendants)*
**Misrepresentation of Copyright Infringement Under 17 U.S.C. § 512(f)**

74.     Amazon incorporates by reference the allegations of the preceding paragraphs as

though set forth herein.

75.     Section 512(f) of the Copyright Act provides that "[a]ny person who knowingly

materially misrepresents under this section . . . that material or activity is infringing . . . shall be

liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider,

who is injured by such misrepresentation, as the result of the service provider relying upon such

misrepresentation in removing or disabling access to the material or activity claimed to be

infringing . . . ." 17 U.S.C. § 512(f).

76.     Defendants submitted false DMCA takedown requests to Amazon through

Amazon's "Report a Violation" tool, improperly seeking removal of materials from product

listings in the Amazon Store. Defendants' notifications to Amazon falsely represented those

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 22
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

trademarks and images appearing in product listings in the Amazon Store infringed on Defendants' purported copyrights.

77.     Defendants knew that these representations were false. At the time they submitted the fraudulent takedown notices to Amazon, Defendants could not have reasonably believed that they held any copyright or other intellectual property interest in the works asserted. Yet Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them, consistent with the notice-and-takedown procedures set forth in the DMCA and Amazon's policies.

78.     In reliance on the misrepresentations in Defendants' takedown requests, and to act expeditiously to protect what it believed at the time to be legitimate rights, Amazon removed full listings, or content from listings, impacting approximately 16 product listings in the Amazon Store.

79.     By submitting takedown notifications in violation of 17 U.S.C. § 512(f), Defendants willfully, knowingly, and materially misrepresented, that 21 product listings were infringing on their intellectual property under copyright law.

80.     As a result of Defendants' false takedown requests, Amazon suffered economic harm and expended significant resources to investigate and address Defendants' wrongdoing. Accordingly, Amazon seeks its attorneys' fees and damages, under 17 U.S.C. §512(f), in an amount to be determined at trial.

**SECOND CLAIM**
***(Against All Defendants)***
**Breach Of Contract**

81.     Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

82.     By enrolling in Amazon Brand Registry and submitting takedown notifications through the "Report a Violation" tool, Defendants entered into valid and enforceable agreements with Amazon.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 23
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

83.     When Defendants applied to Amazon Brand Registry, they agreed to provide accurate and truthful information to Amazon in exchange for the benefit of access and use of the Brand Registry services and tools.

84.     Defendants used the Dhuog Trademark to create the Dhuog Brand Registry account. In doing so, Defendants represented that the Dhuog Trademark was valid and that they had rights to that mark, which representations were neither true nor accurate.

85.     The "Report a Violation" tool mandatory consent form is a valid and enforceable contract that imposed a duty on all users submitting a takedown notice using the tool: (1) to represent a good faith basis for the notice; and (2) to declare under penalty of perjury that the information provided is correct and accurate, and that the user is the owner or agent of the rights described therein.

86.     Each time Defendants submitted takedown notifications to Amazon through the "Report a Violation" tool, Defendants represented that they had "a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner"; and Defendants had to declare, under penalty of perjury, "that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

87.     Amazon performed all of its contractual obligations.

88.     Defendants breached their contractual obligations to Amazon under the Brand Registry Terms of Use and the terms for using Brand Registry's "Report a Violation" tool by claiming ownership of a fraudulently obtained trademark to gain access to Brand Registry, by submitting takedown notifications regarding alleged infringement of the Dhuog Trademark using Brand Registry's "Report a Violation" tool without a good faith basis, by knowingly submitting false information using the "Report a Violation" tool, and by falsely declaring under penalty of perjury that the content complained of violated their trademark rights.

89.     As a result of Defendants' breach of their contracts with Amazon, Amazon suffered economic harm in an amount to be determined at trial.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

**THIRD CLAIM**
*(Against All Defendants)*
**Tortious Interference with Contractual Relationship**

90.     Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

91.     Amazon and third-party sellers who sell products in the Amazon Store have valid contractual relationships under the Amazon Services Business Solutions Agreement, available at https://sellercentral.amazon.com/help/hub/reference/external/G1791?locale=en-US.

92.     On information and belief, Defendants had knowledge of the valid contractual relationships between Amazon and each seller of goods in the Amazon Store.

93.     Defendants knowingly and intentionally submitted to Amazon false takedown notices regarding alleged infringement of the Dhuog Trademark for an improper purpose, which interfered with Amazon's legitimate business relationships with its selling partners.

94.     Defendants' submission of the false trademark takedown notices caused Amazon to investigate Defendants' claims and remove certain listings of sellers in the Amazon Store. Those actions interfered with the business relationship and expectancy between Amazon and third-party sellers using those product listings, and made performance of the contract more expensive and burdensome.

95.     As a result of Defendants' intentional interference with Amazon's legitimate business interests, Amazon suffered economic harm in an amount to be determined at trial.

**FOURTH CLAIM**
*(Against All Defendants)*
**Fraud**

96.     Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

97.     Defendants knowingly misrepresented material facts regarding their rights to the Dhuog Trademark in order to induce Amazon to permit Defendants to open and operate a Brand Registry account.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 25
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

98.     Defendants knew that they had obtained the Dhuog Trademark through fraud, that the mark was invalid, and that they did not have any rights to the mark. Nonetheless, by using the Dhuog Trademark to access Brand Registry, Defendants represented to Amazon that they owned the mark and that it was valid.

99.     Amazon relied on Defendants' representations regarding the validity and their ownership of the Dhuog Trademark, as shown in the USPTO's public records regarding the mark.

100.     Defendants knowingly misrepresented information regarding existing material facts about alleged infringement of the Dhuog Trademark in order to induce Amazon to investigate their takedown requests and take down product listings in the Amazon Store.

101.     Defendants knew that their representations were false at the time they submitted the fraudulent trademark takedown notifications using the "Report a Violation" tool through Amazon Brand Registry.

102.     Specifically, Defendants alleged that the listings violated their alleged trademark rights when they knew such statements to be false. Amazon did not know of the falsity of the misrepresentations and reasonably relied on Defendants' false representations to its detriment.

103.     Amazon had a right to rely on Defendants' representations in the submission of the trademark takedown notifications, especially given the "Report a Violation" tool's consent form requiring such representations to be true under penalty of perjury. At the time they submitted the fraudulent trademark takedown notifications to Amazon, Defendants could not have reasonably believed that they held any intellectual property interest in the listings they flagged as infringing. Yet Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them.

104.     As a result of its reliance on Defendants' intentional misrepresentations, Amazon suffered economic harm in an amount to be proven at trial.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## FIFTH CLAIM
### *(Against All Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, et seq.**

105.   Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

106.   Defendants' filing of false and fraudulent trademark takedown notifications constitutes unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

107.   Defendants' filing of false and fraudulent trademark takedown notifications harms the public interest by using false claims of infringement to undermine legitimate sales by Amazon's selling partners in the Amazon Store.

108.   Defendants' false and fraudulent trademark takedown notifications directly and proximately cause harm to and tarnish Amazon's reputation and goodwill with consumers, and damages its business and property interests and rights.

109.   Accordingly, Amazon seeks to enjoin further violations of RCW 19.86.020 and recover from Defendants their attorneys' fees, costs, and actual damages, trebled.

## SIXTH CLAIM
### *(Against All Defendants)*
**Cancellation of the Dhuog Trademark for Fraud, and As Void Ab Initio for Lack of Use as of Filing Date, 15 U.S.C. § 1119, § 1064**

110.   Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

111.   Defendants used the Dhuog Trademark to gain access to Brand Registry and submit fraudulent notices of infringement to Amazon. Amazon has a real interest in seeking cancellation of the Dhuog Trademark and the entitlement to a statutory cause of action to bring this action.

112.   Defendant Wu is the current owner of the Dhuog Trademark.

113.   On September 1, 2020, Defendant Dengkun filed the application to register the Dhuog Trademark, claiming that the mark was in use in commerce under Section 1(a) of the

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 27
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Lanham Act, 15 U.S.C. §1051(a), in connection with the goods listed in the application, and submitted a specimen purporting to show such use.

114.    The application to register the Dhuog Trademark was filed and signed under the name Jeffrey S. Firestone as attorney of record. Mr. Firestone also signed the declaration as part of that application attesting that: (1) "The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;" and (2) "the specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date."

115.    On information and belief, the application to register the Dhuog Trademark contained false statements. On information and belief, the application was not filed by Mr. Firestone, but was instead filed by a non-attorney using Mr. Firestone's name and credentials, either Defendant Dengkun or his agent. On further information and belief, the statements that the mark was in use in commerce as of the filing date of the application and that the specimen showed such use was also false, as the specimen was fabricated by Defendant Dengkun and/or his agent.

116.    On information and belief, Defendant Dengkun and/or his agent knew these statements were false, as they were aware that Mr. Firestone had not prepared the application, and that the specimen was fabricated because they had created it for purpose of the filing.

117.    Defendant Dengkun and/or his agent made these false representations to deceive the USPTO into accepting the application and issuing the registration for the Dhuog Trademark.

118.    But for these false statements, the USPTO would not have issued the registration for the Dhuog Trademark. However, in reliance on these false statements, the USPTO issued the registration for the Dhuog Trademark on April 27, 2021.

119.    Defendant Dengkun assigned the Dhuog Trademark to Defendant Wu in September 2021.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 28
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

120.     Amazon has been and will continue to be harmed by the Dhuog Trademark registration because Defendants could continue to use the registration to assert takedowns in the Amazon Store.

121.     Based on the foregoing, Defendant Dengkun obtained the Dhuog Trademark registration fraudulently, which is grounds for cancellation of the registration in its entirety.

122.     As a further basis for cancellation, because Defendant Dengkun was not using the Dhuog Trademark in connection with any of the goods identified in the Dhuog Trademark application as of the date the application was filed, the Dhuog Trademark registration is void *ab initio*.

**SEVENTH CLAIM**
*(Against All Defendants)*
**Civil Liability for False or Fraudulent Registration, 15 U.S.C. § 1120**

123.     Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

124.     Defendant Dengkun procured the Dhuog Trademark registration from the USPTO through a knowingly false and/or fraudulent declaration and representations. The Dhuog Trademark application was purported to have been signed by an attorney when, on information and belief, the attorney signatory was not actually involved in preparing the trademark application; the application contained a fabricated specimen of use that falsely purported to show use of the Dhuog mark in commerce; and the application contained a declaration that falsely alleged that the Dhuog mark was in use in commerce.

125.     The USPTO issued the registration for the Dhuog Trademark in reliance on Defendant Dengkun's false statements and representations, and Defendant Dengkun intended for the USPTO to rely on these false statements and representations. Had the USPTO been aware of the falsity of Defendant Dengkun's statements and representations in the application, it would not have issued a registration for the Dhuog Trademark.

126.     To gain access to Brand Registry, Amazon requires that a brand have either registered a trademark or applied for a trademark with an eligible government trademark office,

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 29
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

including without limitation the USPTO. Defendant Dengkun obtained a registration for the Dhuog Trademark on April 27, 2021. Defendants used the Dhuog Trademark registration to open the Dhuog Brand Registry Account on August 4, 2021. Had Amazon been aware that Defendant Dengkun made false statements in support of a trademark application to the USPTO in order to gain access to Brand Registry, Amazon would not have granted Brand Registry access to Defendants.

127.    Amazon was damaged by Defendant Dengkun's false and fraudulent procurement of the Dhuog Trademark because (1) Defendants used the Dhuog Trademark to fraudulently gain access to Brand Registry and open the Dhuog Brand Registry Account, and (2) Defendants used the Dhuog Trademark to issue fraudulent takedown notices in the Amazon Store.

128.    Defendant Dengkun is liable to Amazon for all damages and injury it has suffered as a result of his fraudulent procurement of the Dhuog Trademark.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A.    That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all others in active concert or participation with them, from:

(i)    Submitting to Amazon any takedown notifications based on false assertions of rights of ownership by any means or otherwise violating 17 U.S.C. § 512(f), whether as written submissions, through the "Report Infringement" form, or using the "Report a Violation" tool;

(ii)    enrolling or attempting to enroll in Amazon Brand Registry;

(iii)    selling products in Amazon's stores;

(iv)    selling products to Amazon or any of its affiliates;

(v)    opening or attempting to open any Amazon selling accounts;

(vi)    filing fraudulent trademark applications or other fraudulent declarations and statements with the USPTO in connection with trademark applications

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    or registrations in order to gain access to Amazon's Brand Registry or

2    issue fraudulent trademark takedown notices using Amazon's Brand

3    Registry; and

4    (vii)    assisting, aiding, or abetting any other person or entity in engaging or

5    performing any of the activities referred to in subparagraphs (i) through

6    (vi) above;

7    B.    That the Court enter judgment in Amazon's favor on all claims;

8    C.    That the Court enter an order requiring Defendants to pay all general, special, and

9    actual damages that Amazon has sustained or will sustain as a consequence of Defendants'

10    unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by RCW

11    19.86.020;

12    D.    That the Court enter an order requiring Defendants to pay the maximum amount

13    of prejudgment interest authorized by law;

14    E.    That the Court enter an order requiring Defendants to pay the costs of this action

15    and Amazon's reasonable attorneys' fees and other costs incurred in prosecuting this action, as

16    provided for by 17 U.S.C. § 512(f), RCW 19.86.020, or otherwise allowed by law;

17    F.    That the Court enter an order requiring identified financial institutions restrain

18    and transfer to Amazon all amounts arising from Defendants' unlawful activities as set forth in

19    this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case;

20    G.    That the Court enter an order under 15 U.S.C. § 1119 cancelling the registration

21    for the Dhuog Trademark in its entirety; and

22    H.    That the Court grant Amazon such other, further, and additional relief as the

23    Court deems just and equitable.

24

25

26

27

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 31
(2:23-cv-00484-JHC-SKV)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    DATED this 15th day of May, 2024.

2                             DAVIS WRIGHT TREMAINE LLP

3                             *Attorneys for Plaintiffs*

4                             *s/ Scott Commerson*

5                             Scott Commerson, WSBA #58085
865 South Figueroa Street, Suite 2400

6                             Los Angeles, CA 90017-2566
Tel: (213) 633-6800

7                             Fax: (213) 633-6899
Email: scottcommerson@dwt.com

8

9                             *s/ Lauren Rainwater*

10                            Lauren Rainwater, WSBA #43625
920 Fifth Avenue, Suite 3300

11                           Seattle, WA 98104-1604
Tel: (206) 622-3150

12                           Fax: (206) 757-7700
Email: laurenrainwater@dwt.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

FIRST AMENDED COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF - 32
(2:23-cv-00484-JHC-SKV)